# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

NAKIA CHANEY,

                              Plaintiff,

          v.                                                      9:15-CV-653
                                                                  (TJM/ATB)
GREGORY M. VENA, et al.,

                              Defendants.

---

NAKIA CHANEY, Plaintiff pro se
JUDITH B. AUMAND, ESQ. for defendants Vena and Bell
JONATHAN M. BERNSTEIN, for defendant Dagostino

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report-Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In the relevant portion of plaintiff's civil rights complaint, he alleges that

defendant D'Agostino refused to provide plaintiff with a suitable mattress to sleep on,

while he was incarcerated in the Schenectady County Jail ("SCJ") from October 17,

2014 until May 22, 2015 in violation of his constitutional rights. (Complaint

("Compl.") at 10, 11-12).[1]

Presently before the court is a motion for summary judgment filed by

Schenectady County Sheriff Dominick D'Agostino. (Dkt. No. 64).  Plaintiff has

---

[1] The court will cite to the pages of the complaint as assigned by the court's electronic filing system - CM/ECF.

responded in opposition to the motion, defendant D'Agostino has filed a reply, and plaintiff has filed what he has titled a "response" to defendant's memo of law. (Dkt. Nos. 67, 70, 71). For the following reasons, this court finds that the defendant's motion for summary judgment should be granted, and the complaint dismissed in its entirety as against defendant D'Agostino.

## I.   <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.   Exhaustion of Administrative Remedies

### A.   Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford*

*v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

Grievance programs and procedures in ***county*** facilities are contained in the regulations governing the New York State Commission of Correction, appearing in the chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," in the part specifically entitled "Grievance Program." N.Y. CODE RULES & REGS. tit.9, §§7032.1-7032.11.  These regulations specifically provide that the chief administrative officer of the correctional facility shall establish and maintain a formal inmate grievance procedure. *Id.* § 7032.1.  The regulations provide that the facility shall maintain grievance forms for the inmates to use and shall make those forms readily available to inmates. *Id.* §§ 7032.4(d), 7032.6.  The regulations also provide that instructions for filing a grievance shall be included in the facility rules and regulations as required by section 7002.9(a)(15), and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

An inmate must file his grievance within five days of the date of the conduct giving rise to the complaint. *Id.* § 7032.4(d).  The chief administrative officer of the facility designates a staff member to act as a grievance coordinator, and the regulations provide that each grievance shall be fully investigated by an individual who was not personally involved in the circumstances giving rise to the grievance. *Id.* § 7032.4(e),

4

(f).  The regulations specify minimum requirements for the type of information that must be gathered during the investigation of the inmate's grievance. *Id.* § 7032.4 (g)(1)-(g)(4).

The grievance coordinator must issue a written decision within five business days, containing the "facts and reasons underlying the coordinator's determination," and a copy of the determination must be provided to the inmate. *Id.* at 7032.4(i).  The plaintiff may appeal an adverse determination to the chief administrative officer or his designee within two business days of receiving the adverse determination. *Id.* § 7032.4 (j).  The chief administrative officer renders a decision within five business days, and if the inmate is still not satisfied, he may appeal the adverse decision directly to the Commission of Correction within three business days. *Id.* §§ 7032.4(k), 7032.5.

Within three business days after receiving the appeal from the inmate, the chief administrative officer of the facility must mail the appeal to the Commission's Citizens Policy and Complaint Review Council (CPCRC), and the grievance coordinator must provide the inmate with a receipt of mailing. *Id.* § 7032.5(c).  The CPCRC has forty-five days within which to issue a written decision. *Id.* § 7032.5(d).  In certain circumstances, inmates will be provided assistance at any stage of the proceedings. *Id.* § 7032.9.  The chief administrative officer of the facility must keep a centralized record of all grievances, and facility employees are given an orientation on the grievance procedures.[2] *Id.* §§ 7032.10, 7032.11.

---

[2] The regulations also provide that if an inmate is released or transferred to another facility prior to the resolution of a grievance, the chief administrative officer "shall cause a determination to be made on such grievance . . .", and if the grievance is denied, the chief administrative officer "shall submit the grievance to the [CPCRC] as set forth in section 7032.5 of this Part." 9 NYCRR § 7032.7.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

6

## B.    Application

In this case, plaintiff concedes that he did not exhaust his administrative remedies.[3]  At the time of his booking into SCJ, plaintiff was given the facility rule book, which contains the instructions for filing grievances. (Def.'s Exs. G, K) (Dkt. Nos. 64-8 at 4 (Booking Sheet), 64-12 at CM/ECF 24-26 (Rule Book) & Ex. M. (Lt. Josua Guerin Aff. ¶¶ 1-5) (Dkt. No. 64-14)).  However, plaintiff argues that the Grievance Sergeant "refused to allow the plaintiff to file his grievance . . . ." (Pl.'s Response to Summary Judgment ¶ 2) (Dkt. No. 67).  In plaintiff's "Answer to Omnibus Discovery," plaintiff states that his grievance was "refused." (Dkt. No. 64-11 at 5).  In the complaint, plaintiff states that he did not file a grievance because he "was repeatedly denied a grievance form because the grievance sergeant claimed another inmate already filed a grievance on [the] issue." (Compl. ¶ 4(b) at 3).

In his response to the defendant's summary judgment motion, plaintiff now claims that he did not continue to request a grievance form because the sergeant's "tone" made it clear that he did not wish to continue to discuss the issue, and the sergeant allegedly told plaintiff that the next time he asked for a form, he would be

---

[3] Although plaintiff states in his complaint that he wrote three letters to defendant D'Agostino, but received no reply, it is well-settled that writing letters to superior officers is not a substitute for proper exhaustion of administrative remedies, both before and after *Ross*. *See McCloud v. Tureglio,* No. 09:07-CV-650, 2008 WL 1772305, at *15 (N.D.N.Y. April 15, 2008) (complaint letters to prison officials did not satisfy exhaustion of grievance process); *Hall v. Bradley*, No. 12-CV-6202, 2015 WL 3964897, at *5 (W.D.N.Y. June 29, 2015) (neither letters to other DOCCS officials, nor conversations with prison officials about the incident satisfy the exhaustion requirement). *See also Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (citing (inter alia *Geer v. Chapman*, No. 9:15-CV-952, 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), (Rep't-Rec*.*), *adopted*, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.")).

locked in his cell. (Dkt. No. 67 ¶ 13).  Plaintiff argues that he "exhausted" his remedies "once he felt threatened by the grievance [sergeant], and "it was determined that plaintiff [would] not receive a grievance." (*Id.* ¶ 16).

Based on *Ross*, the court must now determine whether the grievance process was "available" to plaintiff, given the facts that he has stated.[4]  Clearly, the process is technically "available" to plaintiff because there exists a mechanism to file grievances at SCJ.  Defendants argue that plaintiff could have filed a grievance, even if one grievance sergeant refused to give plaintiff a grievance form because there are two sergeants in charge of the grievance process, and they work different shifts.  The SCJ Inmate Rules and Regulations book confirms that there "is a [Grievance] Sergeant on both active shifts." (Def.'s Ex. J at CM/ECF p.26) (SCJ Rule Book at 34).

The fear of retaliation must be "reasonable" to render the grievance procedure "unavailable." *Harrison v. Stallone*, No. 9:06-CV-902, 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) (citing *Thomas v. Cassleberry*, No. 03-CV-6394, 2007 U.S. Dist. LEXIS 30129, at *3-6 (W.D.N.Y. April 24, 2007)).  Plaintiff's statement that the Sergeant's "tone" made plaintiff fear "retaliation," is not a "reasonable" fear of retaliation.  If such an allegation rendered the process unavailable, it would be quite simple for inmates to circumvent the grievance procedure by making a conclusory statement that the officer's "tone" was aggressive or threatening.  Thus, in itself, plaintiff's allegation that he felt "threatened" by the Sergeant's tone of voice does not

---

[4] As stated above, "estoppel" based on official action impeding exhaustion, is now part of the "availability" analysis.  Therefore, the court will consider both of plaintiff's reasons to excuse his failure to exhaust under the umbrella of "availability."

excuse plaintiff from completing the grievance process.  Plaintiff's claim that the sergeant vaguely threatened to lock plaintiff in "his" cell is also fails to rise to the level of a "reasonable" fear of retaliation.  Inmates are always locked in their cells, and plaintiff does not allege that the sergeant made any other "threats" of physical harm or false charges to accompany that statement.  Thus, plaintiff's fear of "retaliation" is insufficient to excuse the exhaustion requirement.

Plaintiff's other reason for failing to file a grievance requires more consideration. In his complaint, plaintiff claims that he was denied a grievance "form" because another inmate's grievance raising the mattress issue had been denied. (Compl. ¶ 4(b)). In his answers to defendant's interrogatories, plaintiff states that the Grievance Sergeant did not "accept" his grievance because the other inmate's grievance on the same issue had been denied. (Dkt. No. 64-11 at 2) (Interrogatory Ans. Nos. 8-11). Plaintiff states that he complained to the officers on the unit and to a grievance sergeant whose names plaintiff does not remember.  Plaintiff then states that he complained to Grievance Sergeant "Nick named Russia,"[5] and then repeats that his grievance was not "accepted." (*Id.*)

Defendants have attached a copy of the other inmate's grievance to their Reply. (Dkt. No. 70 Ex. A).  A review of the grievance shows that in October of 2014, Inmate Tracy Hunter filed a grievance complaining about various issues, including the thickness of the mattresses upon which the inmates were required to sleep. (Dkt. No. 70-1 at 10).  Inmate Hunter's grievance was investigated and denied at the facility level

---

[5] The court assumes that plaintiff intends to say that the sergeant was "nicknamed" Russia.

as well as by the CPCRC, "sustain[ing] the action taken by the facility administration."
(Dkt. No. 70-1 at 3).  The letter from the CPCRC is dated March 23, 2015. (*Id.*)  The
decision of Sergeant Greg Cufari, who signs as the Grievance Coordinator Schenectady
County Sheriff's Department, states in relevant part, that Inmate Hunter complained
about the mattresses at the facility because of a law suit "detailing the same complaint .
. . which is outlined in this grievance." (*Id.* at 4).  Sergeant Cufari then states that
Inmate Hunter had been at SCJ for almost one year before ever complaining about the
mattresses, and it was Sergeant Cufari's opinion that "Inmate Hunter is attempting to
follow the same frivolous suit for a quick pay day." (*Id.* at 5).

The SJC Inmate Rule Book states that if the Grievance Sergeant cannot resolve
the inmate's problem "informally," after the inmate has discussed the issue with his
Floor Officer and his supervisor, "and provided that [the] complaint is a grievable
matter, a grievance form ***will be provided***." (Dkt. No. 64-12 at 26).  After completing
the form, the inmate returns the form to the Grievance Sergeant.[6] (*Id.*)  It appears that
providing the form to the inmate is the responsibility of the Grievance Sergeant, who
also makes the determination of whether the problem is grievable.

While it is undisputed that a problem with plaintiff's mattress is a grievable
issue, plaintiff claims that his grievance was not "accepted" because he was told that

---

[6] In his response to the defendant's motion, plaintiff states that "all grievances are types [sic] up
by the grievance sgt. If he decides to give an inmate a grievance at his discretion." (Dkt. No. 67 ¶ 10).
The rules are contrary to plaintiff's statement, as is the grievance filed by Inmate Hunter.  The Rule
Book states that inmates obtain the grievance form from the sergeant, but the inmate completes the
form and returns it to the sergeant.  Inmate Hunter's grievance is clearly handwritten. (Dkt. No. 70-1 at
6-10).  In fact, the form states that it is to be "*(Completed by the grievant)*." (*Id.* at 6) (Italics in
original).  Plaintiff's apparent inaccuracy or "embellishment" does not change this court's opinion
regarding exhaustion.

Inmate Hunter's grievance on the same issue had been denied. The court notes that the rationale for the denial of Inmate Hunter's mattress grievance lends itself to supporting plaintiff's allegations. If the officer who investigated Inmate Hunter's grievance believed that the claim was "frivolous," and that the grievance was filed in response to an article that Inmate Hunter read about a law suit against another facility, then it is reasonable to assume that when plaintiff asked about filing a grievance relating to mattresses,[7] he could have been told that it would be futile to file the grievance. If the Grievance Sergeant refused to "accept"[8] such a grievance and denied plaintiff the grievance form, then it is arguable that administrative remedies were not "available" to the plaintiff in that situation. The same result was possible regardless of which grievance sergeant plaintiff asked.

The court notes that very recently the Second Circuit has discussed an inmate's claim that administrative remedies were "unavailable" because he was in disciplinary housing and the officers refused to give him grievance forms. *See Kearney v. Gebo*, __ F. App'x __ , 2017 WL 5256820 (2d Cir. Nov. 13, 2017). In *Kearney*, the court held that even if the officers refused to give the plaintiff grievance forms, the New York State regulations expressly allowed grievances to be filed on any kind of paper.

---

[7] Since the rules specify that an inmate must explain what he wants to grieve so that the Grievance Sergeant can make the determination whether the problem is "grievable," then plaintiff would have to tell the Grievance Sergeant that he wished to file a grievance about his mattress before the Grievance Sergeant gave plaintiff the grievance form.

[8] Plaintiff uses the words "accept" and "denied," when it is clear that he did not write a grievance. In addition, if the grievance sergeant did not give plaintiff the form, and no grievance was filed, then the grievance was not "denied." However, this court has interpreted plaintiff's statements to mean that he was denied the opportunity to write and file a grievance by the sergeant.

Moreover, plaintiff Kearney had written letters of complaint to the Inspector General and to the Commission of Correction, showing that he had both paper and writing implements. *Id.* at *2. Thus, the court found that the grievance procedure was "available" to Kearney. *Id.*

This case is distinguishable from *Kearney* based on the evidence in the record. SCJ is a County Facility which has its own specific rules for filing grievances,[9] stated in its Rule Book, which rules are consistent with the New York Rules and Regulations cited above. The Grievance Sergeant makes the determination of whether the inmate's problem is "grievable," and only then, is the inmate given a grievance form to complete. The inmate must return the completed form to the Grievance Sergeant who is responsible for collecting the grievances and making the initial determination. (*See* Def.'s Ex. K, Rule Book at p.34) ("after completing the form, return it to a Grievance Sergeant. . . . Within five (5) days of the receipt of the grievance, ***the Grievance Sergeant shall issue a written determination.***" (emphasis added)).

If the Grievance Sergeant believed that plaintiff's complaint was "frivolous" because he was already aware of such a claim by Inmate Hunter, he may have refused plaintiff's request for a grievance form and could have told plaintiff that such a claim was not acceptable because it had already been found to be frivolous and denied. Thus, whether the grievance was filed on a grievance form or if plaintiff had written it on any other sheet of paper, the Grievance Sergeant would still have been responsible for

---

[9] New York State Correctional Facilities are governed by Title 7 of the NYCRR, while County Jails are governed by Title 9 of the NYCRR.

collecting the grievance and making the initial determination.[10]  If the Grievance

Sergeant refused to accept the grievance, the rules do not provide plaintiff with any

other option for having the grievance heard.

This court is ***not*** making a finding that the Grievance Sergeant refused plaintiff's

grievance or his attempt at obtaining forms to file the grievance.  However, plaintiff's

allegations and the evidence submitted show that there is a question of fact regarding

the "availability" of administrative remedies for plaintiff's grievance.  The question of

whether plaintiff was misled or impeded by the Grievance Sergeant cannot be decided

based on the documents submitted alone.  Therefore, this court cannot recommend

granting summary judgment in favor of defendant D'Agostino based upon a failure to

exhaust.

V.    **Personal Involvement**

A.    **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section

1983 case, and respondeat superior is an inappropriate theory of liability.  *Richardson*

*v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-

24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant

can be personally involved in a constitutional deprivation, and thus be subject to

individual liability.

A supervisory official is personally involved if that official directly participated

---

[10] The rules also provide that the Grievance Sergeant first attempts to resolve "the problem informally." (Def.'s Ex. K, Rule Book at 34).  The rules leave the inmate's grievance completely in the hands of the Grievance Sergeant.

in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*,  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*.  *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases).  However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.  *Id.*  In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

14

### B.    Application

Defendant D'Agostino has submitted an affidavit in which he states that he never created a policy or custom of providing inmates with inadequate mattresses. (D'Agostino Aff. ¶ 2).  Defendant D'Agostino also states that "at no time" while plaintiff was incarcerated at SCJ in 2014 and 2015, was defendant D'Agostino aware that plaintiff did not receive a new mattress or that anyone denied plaintiff a new mattress. (*Id.* ¶ 3).  Defendant D'Agostino states that he was not aware that plaintiff had any medical condition or other issue that would have warranted supplying plaintiff with a new mattress, and that the defendant "had no involvement in denying Plaintiff a new mattress or supplying Plaintiff with an alleged inadequate mattress." (*Id.*)

In his complaint, plaintiff alleges that he wrote letters to defendant D'Agostino, but he never received a response. (Compl. at 11-12)  Plaintiff further states in his complaint that defendant D'Agostino "need[s]" to inspect the mattresses at his facility and provide mattresses that "he" would sleep on. (Compl. at 14)  In his answer to the defendant's interrogatories, plaintiff states that he sent letters to defendant D'Agostino, but adds that he "had direct contact with [D']Agostino during his tour/walk through about the mattress and he told me to talk [to] the floor officer who directed me to the grievance sgt.[] . . . ." (Def.'s Ex. J at p.2, ¶ 5)  In another document, entitled "Plaintiff's Answer to Omnibus Discovery," plaintiff states that he "spoke" with defendant D'Agostino "as Sgt. Nicknamed Russia refused to accept my grievance." (Def.'s Ex. J at p.3 ¶ 2)  In his response to defendant's motion for summary judgment, plaintiff states that defendant D'Agostino should be "held accountable for all incidents

15

within his facility." (Dkt. No. 67 ¶ 15).

Clearly, the plaintiff's statements, implying that defendant D'Agostino must be "held accountable" for the incidents in his facility merely restate the doctrine of respondeat superior, which is not applicable in section 1983 actions. Plaintiff's additional statement that defendant D'Agostino should be inspecting the mattresses at his facility to make sure that they are acceptable is also not sufficient to establish personal involvement by the Sheriff.

Even if the court accepts the fact that defendant D'Agostino failed to respond to letters of complaint sent by plaintiff, this conduct alone would still be insufficient to establish personal involvement. *Thompson v. Pallito*, 949 F. Supp. 2d 558, 575-76 (D. Vt. 2013) (citing cases). If merely writing an unanswered letter to a superior officer were sufficient to establish personal involvement, it would "contravene the black-letter principle that § 1983 does not allow for respondeat superior liability." *Id. See also Jones v. Rock*, No. 9:12-CV-447, 2013 WL 4804500, at *16 (N.D.N.Y. Sept. 6, 2013) (letters to superior officers insufficient to establish personal involvement). *Cf. Guillon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), inmates who allege that they sent a complaint or grievance letter to a prison official are entitled to have the court draw that reasonable inference for *pleading purposes*).

Personal involvement will be found if the supervisory official "receives *and* acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002) (emphasis added)

16

(citing inter alia *Ramos v. Artuz*, No. 00 Civ. 149, 2001 WL 840131, at *8-10 (S.D.N.Y. July 25, 2001) (personal liability established where prison official "sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff")).  In addition, personal involvement will be established if the official actually reviews plaintiff's "ongoing" grievance and fails to "remedy the wrong." *See e.g. Sanchez v. Graham*, No. 9:12-CV-1646, 2016 WL 5854551, at *7 (N.D.N.Y. Sept. 12, 2016), (Rep't-Rec.), *adopted*, 2016 WL 5852511 (N.D.N.Y. Oct. 6, 2016); *Young v. Choinski*, 15 F. Supp. 3d 172, 192-93 (D. Conn. 2014) (citing inter alia *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (personal involvement established where an officer reviewed a grievance about an ongoing violation and the supervisor was authorized to remedy the violation directly)).

However, personal involvement will not exist if the superior officer receives a complaint, but delegates the response and/or investigation to a subordinate. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  In this case, plaintiff claims in his response to defendant's motion that he had "direct contact" with the Sheriff, and that defendant D'Agostino told plaintiff to speak with the floor officer.  However, plaintiff has never alleged when this alleged conversation with D'Agostino took place, nor has he ever indicated when he wrote letters to the defendant.  Plaintiff only alleges in his complaint that he wrote letters to defendant D'Agostino and had not received any response as of May 15, 2015 - shortly before filing the instant complaint. (Compl. at p.12).  Such vague allegations are insufficient to establish personal involvement. *See Guillory v. Cuomo*, 616 F. App'x 12, 14 (2d Cir. 2015) (affirming sua sponte dismissal when

plaintiff did not allege when and where the letters to defendant Cuomo were sent, what they said, or how they were sent).

Even assuming the truth of plaintiff's statement, defendant D'Agostino's alleged advice to plaintiff to address his issues to the floor officer, is equivalent to referring plaintiff's letter of complaint to a subordinate for investigation. The fact that defendant D'Agostino directed plaintiff to subordinates for obtaining relief does not create personal involvement in the alleged violation that plaintiff was attempting to remedy. *See Smith v. City of New York*, No. 14 Civ. 5927, 2017 WL 2172318, at *8 (S.D.N.Y. May 16, 2017) (granting summary judgment based on a lack of personal involvement because "mere complaints made to supervisory defendants are not enough to establish supervisory liability) (citing *Faulk v. New York City Dep't of Corrections*, No. 08 Civ. 1668, 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (granting summary judgment where plaintiff alleged only that he spoke to the warden several times about his grievances)).

Although plaintiff also states that he "spoke" with defendant D'Agostino, "as" the Sergeant refused to accept plaintiff's grievance, this statement is vague and to conflict with plaintiff prior statement in which he claims that when he spoke to defendant D'Agostino, the Sheriff told plaintiff to speak with the floor officer. (Def.'s Ex. J at 2-3). The fact that plaintiff may have spoken to defendant D'Agostino about his grievance is insufficient to show that defendant D'Agostino was personally involved in violating plaintiff's constitutional rights, given plaintiff's statement that D'Agostino told plaintiff how he needed to go about complaining about his mattress.

18

*Faulk, supra.* Thus, this court finds that plaintiff has failed to allege the requisite personal involvement to sustain a section 1983 action against defendant D'Agostino.[11]

## VI.    **Cross-Claims**

Defendant D'Agostino has moved for dismissal of the cross-claims asserted by defendants Vena and Bell, Niskayuna Police Officers. (*See* Dkt. No. 23, ¶ 52). Defendants Vena and Bell allege that any injuries or damages sustained by plaintiff as a result of the incident described in plaintiff's complaint "were sustained in whole or in part by reason of the negligence and culpable conduct of the co-defendants." (*Id.*) Defendants Vena and Bell also seek apportionment of liability. (*Id.*)

Plaintiff has brought this claim pursuant to 42 U.S.C. § 1983, claiming that defendants violated his federal constitutional rights.[12]  Section 1983 does not provide an express right to contribution or indemnification. *Taifer v. Catherines Stores Corp.*, No. 06 Civ. 2976, 2008 WL 7728651, at *3 (S.D.N.Y. May 28, 2008) (citing *Carrion v. City of New York*, No. 01 Civ. 2255, 2002 WL 31107747, at *3 (S.D.N.Y. Sept. 23, 2002) (citations omitted); *Hayden v. Hevesi*, No. 05-CV-0294E, 2007 WL 496369, at *4 (W.D.N.Y. Feb. 12, 2007)).  In addition, under New York law, indemnification is only available when there is either an express or implied agreement between the parties. *Id.*

In this case, defendant D'Agostino, Sheriff of Schenectady County was named as

---

[11] Because I have found a lack of personal involvement by defendant D'Agostino, I need not address defendant's claim of qualified immunity.

[12] Plaintiff briefly mentions the New York State Constitution, but the case is essentially brought under section 1983.

a defendant in connection with conditions of confinement at SCJ, while defendants Vena and Bell, Niskayuna Police Officers were named in connection with an allegedly unconstitutional search during plaintiff's arrest. (Compl. *generally*). The only remaining claim against defendant D'Agostino was in relation to his claimed denial of a constitutionally adequate mattress. This issue is completely unrelated to the claims against defendants Vena and Bell, and there is certainly no indication of any agreement with these unrelated officers, who do not even work for the same municipality. In addition, defendants Vena and Bell have failed to respond to defendant D'Agostino's motion, notwithstanding the great amount of time that has passed since its filing on June 1, 2017. Thus, the court can only assume that defendants Vena and Bell do not oppose dismissal of their frivolous cross-claims. Based on the law, and the failure of the defendants to oppose defendant D'Agostino motion, this court recommends that any cross-claims filed by defendants Vena and Bell be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant D'Agostino's motion for summary judgment (Dkt. No. 64) be **GRANTED**, and the complaint dismissed in its entirety as against defendant D'Agostino based on a lack of personal involvement, and it is

**RECOMMENDED**, that defendant D'Agostino's motion for summary judgment as relates to cross-claims filed by defendants Vena and Bell (Dkt. No. 64) be **GRANTED**, and any such cross-claims be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

20

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 29, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge