UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NAKIA CHANEY,

                              Plaintiff,

   v.                                                            9:15-CV-653
                                                                           (TJM/ATB)

GREGORY M. VENA, et al.,

                              Defendants.

---

NAKIA CHANEY, Plaintiff pro se
JUDITH B. AUMAND, ESQ. for defendants Vena and Bell

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report-Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

**I.     Facts**

Plaintiff filed this complaint, alleging a multitude of claims against his criminal defense attorney, the prosecutor in his criminal case, two officers in the Niskayuna Police Department, who were involved in the search of his home, and the Sheriff of Schenectady County. (Complaint ("Compl.")) (Dkt. No. 1).  The complaint was, in large part, devoted to claims of negligence against his criminal defense attorney. (*Id.*) On March 25, 2016, Senior Judge McAvoy dismissed most of plaintiff's complaint. (Dkt. No. 10).  Judge McAvoy dismissed all of the claims against plaintiff's attorney because it is well-established that court-appointed attorneys do not act under color of state law for purposes of section 1983 when they are performing their traditional

functions as counsel to defendants. (Dkt. No. 10 at 7-8) (citing inter alia *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981) (county public defender does not act under color of state law when performing traditional advocacy functions). All but one of plaintiff's other claims were dismissed either on initial review or as the result of a previous summary judgment motion, filed on behalf of defendant Sheriff D'Agostino. (Dkt. Nos. 10, 64, 92, 94).

The only surviving claim in this action is related to an alleged body cavity search by defendants Niskayuna Police Officers Vena and Bell, which occurred during the execution of the search warrant at the house where plaintiff lived with his girlfriend on March 7, 2014. (See Dkt. Nos. 10, 92, 94). The surviving claim is for a violation of the Fourth Amendment, relating to the search itself. The complaint also contained an equal protection argument, related to the search, and a false arrest claim, but those claims were dismissed in Senior Judge McAvoy's initial order. (Dkt. No. 10 at 9-10).

In the relevant portion of the complaint, plaintiff states that the two remaining defendants, Gregory M. Vena and Alan Bell, officers in the Niskayuna Police Department, arrested plaintiff after executing the search warrant and locating "6 suboxones and a syringe."[1] (Compl. at 9-10). Plaintiff claims that during the execution of the search warrant, Officers Vena and Bell subjected plaintiff to a visual body cavity search. (*Id.* at 9-10). During the search, Officers Vena and Bell threatened to use force if plaintiff did not strip naked, and Officer Bell said: "You people love to hide drugs up there." (*Id.* at 10). Plaintiff states that the defendants made plaintiff spread his

---

[1] Plaintiff states that these items belonged to his co-defendant. (Compl. at 7).

buttocks, using a flashlight to look for contraband. (Compl. at 9). Plaintiff claimed that he should "never have been touched in such a way,"[2] and the body cavity search exceeded the scope of the search warrant, constituting a sexual assault. (*Id.*)

As exhibits to their motion, defendants have filed several of the documents relating to the search warrant, in addition to plaintiff's deposition transcript. (Dkt. No. 99-2 - 99-25). The court will discuss the relevant additional facts in its analysis below.

## II.  Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273.

---

[2] During plaintiff's deposition, he testified that defendant Vena touched plaintiff's buttocks with a gloved hand. (Pl.'s Dep. at 48) (Def.s' Ex. T) (Dkt. No. 99-21).

In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

**III.   Inappropriate Search**

    **A.   Legal Standards**

An individual has the well-established constitutional right to be free from unreasonable searches. U.S. Const. amend IV. *Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 416 (S.D.N.Y. 2004) (citing *Payton v. New York*, 445 U.S. 573 (1980)). A search warrant does not shield a police officer from executing a search in an unreasonable manner. *Id.* Even if a search is justified in scope, it may still violate the Fourth Amendment if it is conducted unreasonably. *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 79 (D. Conn. 2016). Courts have recognized the importance of guarding against unreasonable strip searches, in view of "the degrading nature of this particular invasion of privacy." *Bolden*, 344 F. Supp. 2d at 416. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the court held that the reasonableness of a strip search turned on

> (1) the scope of the intrusion, (2) the manner in which the search is conducted, (3) the justification for initiating the search, and (4) the place where the search was conducted.

*Bolden*, 355 F. Supp. 2d at 417 (citing *Bell*, 441 U.S. at 559).

"A lawful arrest, like a valid search warrant, creates a presumption of

reasonableness regarding an attendant search." *Id.* The presumption may be rebutted by a showing that the search was conducted in an unreasonable manner. *Id.* "A strip search - even without any type of body cavity examination - has always been viewed as an extraordinary invasion of privacy requiring consideration of the 'totality of the circumstances' and analysis under the *Bell* factors for reasonableness." *Id.* (citing *Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 269 (S.D.N.Y. 2002)). The existence of a warrant authorizing the search of a person or persons, without more, does not justify the extraordinary invasion of privacy which is caused by a strip search or any kind of body cavity search. *Id.*

The Second Circuit has "exhibited considerable regard for" an individual's right to avoid being subjected to a strip search unless "there exists particularized suspicion" that the individual is hiding contraband. *Cotto v. City of Middletown*, 158 F. Supp. 3d at 78 (citing inter alia *Bolden*, 344 F. Supp. 2d at 417). *See also Blue v. City of New York*, No. 14-CV-7836, 2018 WL 1136613, at *15-16 (S.D.N.Y. Mar. 1, 2018) (discussing the standards for strip searches and body cavity searches).

**B.    Application**

Defendants first argue that neither of them conducted a body cavity search of the plaintiff, and in fact, have never conducted a body cavity search of any individual that they have arrested. (Bell Aff. & Vena Aff. ¶¶ 5, 6) (Def.s' Exs. W, X) (Dkt. Nos. 99-24, 99-25). Defendants argue that plaintiff's "uncorroborated" version of the events conflicts with the "simultaneously prepared" business records. (Def.s' Mem. of Law at 3-8). Defendants state that neither of them were alone with plaintiff, and the only way

5

that he would have known their names is if he read them on the warrant application, the arrest reports, or the criminal informations. (Bell Aff. & Vena Aff. ¶ 7).

Defendants have submitted the contemporaneous report, written by Patrolman Michael Terwilliger, who was present with defendants Vena and Bell during the search of the home. (Def.s' Ex. I at 5) (Dkt. No. 99-10).  The search warrant for the home was obtained based upon information from neighbors and other sources that there was "drug activity" occurring at plaintiff's address, including money/drug exchanges and cars arriving and departing in the early morning or late at night.[3] (*Id.*)  The search warrant application was made to, and signed by, a Judge of the Niskayuna Justice Court, and the warrant authorized, among other things, a search of the residence and any person present there. (Def.s' Ex. F).

Patrolman Terwilliger's narrative indicates that officers from five different organizations entered the home and "secured the scene," detaining plaintiff and another individual. (Def.s' Ex. I at 5).  When the officers entered the home, the plaintiff ran to the bathroom and flushed unknown substances down the toilet. (*Id.*)  Three plastic baggies containing marijuana were found "in the drain."  Another individual was searched by a New York State Trooper, who recovered a hypodermic syringe, filled with heroin.  "Search of the residence located marijuana, several hypodermic needles/syringes and a crack pipe." (*Id.*)

Plaintiff has filed two responses to the summary judgment motion. (Dkt. Nos.

---

[3] The defendants have included the entire search warrant application which specifies all the incidents and reports that were used in support of the warrant application. (Def.s' Ex. F) (Dkt. No. 99-7).

104, 106). Plaintiff attempts to rely upon the fact that a co-defendant was "strip" searched, and reasons that because she was "white," it follows that plaintiff must have also been strip searched because he is "black."[4] (Dkt. No. 104 at ¶¶ 1, 12, 13). Plaintiff also argues that the search warrant for the home could not authorize a body cavity search. (Dkt. No. 104 at ¶ 4). Plaintiff also devotes some of his argument to challenging the search warrant in general. (Dkt. No. 104 at ¶6, 9-11). At his deposition, plaintiff claimed that he did not run into the bathroom when the officers entered the home, he did not try to flush anything down the toilet, and the officers did not find any contraband in the house. (Pl.'s Dep. at 28).

Defendants correctly argue that the search warrant was valid, and the search was never challenged at trial by a suppression hearing. It is also clear that plaintiff was incorrect during his deposition when he states that there were no drugs found in the house. Defendants rely upon *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), in which the Second Circuit granted summary judgment to defendants where the plaintiff's testimony was "largely unsubstantiated by any other direct evidence," and "was 'so replete with inconsistencies and improbabilities' that no reasonable juror could undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Id.* at 551.

While plaintiff's statements about the results of the search are not quite correct, plaintiff has always maintained that defendants Bell and Vena performed an inappropriate body cavity search while they were executing the search warrant. The

---

[4] Plaintiff's theory is that, if the officers would strip search a "white" woman, they would definitely have strip searched a "black" man.

7

body cavity search could have been unconstitutional even though search warrant was valid and allowed both the search of the home and individuals in the home. As stated above, more justification is required for a body cavity search. It is true that there is no reference to a search of plaintiff's person in the documents generated after the search of plaintiff's home, while reference is made to the search of plaintiff's girlfriend. However, plaintiff claims that nothing was found as a result of his alleged body cavity search, while the search of his girlfriend's person resulted in the discovery of a hypodermic needle filled with heroin. It would not be unusual or inconsistent to omit the discussion a search during which the officers found no contraband.

Defendants also argue that "a defense to the legality of the search was not raised at the time of the prosecution of the resulting charges." (Def.s' Mem. of Law at 6). However, as stated above, the search warrant was valid, and the contraband was found as a result of the valid warrant. Nothing was found as a result of the alleged body cavity search, and there would have been nothing to upon which to base a suppression motion. It was reasonable not to challenge the legality of the search warrant. The only evidence that was found was discovered as the result of the legal execution of the search warrant, not the alleged illegal search of the plaintiff. Even if the officers conducted themselves[5] as plaintiff describes, it would not have changed the fact that probable cause existed to search the home in which plaintiff was living.[6] *See United*

---

[5] This court makes no such finding. The issue in a summary judgment motion is whether there are questions of fact for the jury to decide. The court may not make credibility determinations.

[6] Even though plaintiff makes some effort to allege in his opposition papers that there was no probable cause for the search warrant itself, he may not raise any challenge to the warrant in this action. A successful challenge to the warrant itself could certainly affect the validity of the plaintiff's

*States v. Ortiz*, No. 06-CR-6076, 2007 WL 925731, at *6 (W.D.N.Y. Mar. 26, 2007) (the exclusionary rule is limited to evidence that the police cannot trace to some "independent" and lawful source) (quoting *United States v. Clark*, 822 F. Supp. 990, 1007 (W.D.N.Y. 1993) ("a violation of the Fourth Amendment should not require exclusion of evidence that was obtainable without the illegal act")). Thus, plaintiff's failure to challenge the validity of the search warrant at the time of trial was reasonable and is not a *Jeffrey's*-type inconsistency that would eliminate a question of fact regarding the incidents at issue.

Although defendants argue that the search did not occur, they also argue that such a search would have been justified even if it had occurred. This court does not agree. Defendants argue that they had "reasonable suspicion" that plaintiff could have been hiding something in a body cavity. However, the narrative does not contain any information that would constitute "particularized" or "individualized reasonable suspicion" that plaintiff hid something in a body cavity. *See Cotto*, 158 F. Supp. 3d at 78 (strip search required "an individualized reasonable suspicion" that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest). It does not

---

conviction. Such a challenge would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87. Plaintiff's conviction does not appear to have been overturned or invalidated in any way. Plaintiff may, however, raise claims regarding the alleged body cavity search because that search revealed no evidence, and a finding in plaintiff's favor regarding the alleged excessive nature of the search would not affect his criminal conviction.

9

appear that plaintiff was aware that the officers were going to execute a search warrant, and it would not appear from the narrative that plaintiff would have had time to flush something down the toilet and hide something else in a body cavity at the same time. Thus, other than plaintiff's status as a potential drug dealer, there was no additional information that defendants would have had to justify a body cavity search.

The officers had sufficient evidence from the search of the home to arrest plaintiff without performing an invasive search. Both defendants have filed affidavits stating that they never conducted body cavity searches when they knew they would be arresting a suspect and taking him or her into custody. (Bell. Aff. & Vena Aff. ¶¶ 5, 6). In fact, both officers specifically state that the policy of the Niskayuna Police Department was *not* to conduct body cavity searches in the field. (Bell Aff. & Vena Aff. ¶ 4). The search warrant authorized a search of "any person" present, but a body cavity search goes beyond the search of one's "person." Thus, defendants have not shown that if the search did occur, it was justified.

The issues in this case ultimately turn on credibility which the court may not determine in a motion for summary judgment, particularly when the court must resolve all ambiguities and draw all inferences against the movant. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted) (credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge when ruling on a motion for summary judgment).

## IV. Qualified Immunity

### A. Legal Standards

The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether a right was clearly established at the time the defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges were clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

### B. Application

Defendants argue that even if there is a question of fact as to whether the search occurred as plaintiff described, they would be entitled to qualified immunity. (Def.s' Mem. of Law at 10-14). This court does not agree. As stated above, it is well-established in the Supreme Court, the Second Circuit, and the District Courts that a body cavity search is intrusive and may only be conducted if the proper circumstances

11

exist.  Neither a valid search warrant, nor a valid arrest automatically justifies such an intrusive search.  Defendants themselves state in their affidavits that the police department's policy is not to perform body cavity or strip searches in the field if an individual is going to be arrested and brought to the station.  The defendants both assert that neither of them have ever conducted a body cavity search in the field.  Thus, it is inconsistent to argue that if such a search did occur as plaintiff claims, the defendants would be entitled to qualified immunity as a matter of law.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 99) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 21, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge